IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DENNIS JARRETT,

    Petitioner,

vs.

ROBERT E. COOPER, JR.,

    Respondent.

No. 10-1192-JDB-egb

ORDER TO MODIFY THE DOCKET,
DENYING PETITION PURSUANT TO 28 U.S.C. § 2254,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Before the Court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), filed by Petitioner, Dennis Jarrett, who currently resides in Jackson, Tennessee. (Docket Entry ("D.E.") 1.)[1] For the reasons stated below, the Petition is DENIED.

I.      BACKGROUND

    A.   State Court Procedural History

On February 2, 2004, a grand jury in Madison County, Tennessee, returned a three-count indictment against Jarrett. (D.E.

_____

[1]      The Clerk is directed to substitute Tennessee Attorney General Robert E. Cooper, Jr. for Tony Parker as respondent in this action. See Fed. R. Civ. P. 25(d).

13-1 at 10—13.)  The first count charged that, on or about October 3, 2003, he unlawfully operated and/or physically controlled a motor vehicle upon a public highway and/or an area frequented by the public at large after having been previously adjudged to be a habitual motor vehicle offender ("HMVO"), in violation of Tennessee Code Annotated § 55-10-616.  The second count charged him with violating the open container law, Tenn. Code Ann. § 55-10-416, and the third count involved a violation of the seatbelt law, id. § 55-9-603.  On April 2, 2004, the State filed a Notice of Request for Enhanced Punishment pursuant to Tennessee Code Annotated § 40-35-202.  (D.E. 13-1 at 15—16.)

Following a jury trial on February 25, 2005, Jarrett was convicted of driving while a HMVO and of violating the open container law.  He was acquitted of the seatbelt charge.  (D.E. 13-3 at 128—29.)  The jury imposed a $3,000 fine on the HMVO count and a $50 fine on the open container count.  (D.E. 13-3 at 128—29)  At a hearing on March 29, 2005, Petitioner was sentenced to a term of imprisonment of six years as a career offender for driving while a HMVO and ordered to pay the $3000 fine imposed by the jury.  (D.E. 13-4 at 50.)  No jail time was assessed for the open container law violation, but Jarrett was ordered to pay the $50 fine.  (D.E. 13-4 at 49—50.)  The trial court directed that the sentence for the HMVO count run consecutively to an undischarged sentence imposed by the Hardeman County, Tennessee Circuit Court and to sentences that were

2

previously imposed in that proceeding for contempt of court. (D.E. 13-4 at 52—53.) Judgments were entered on April 4, 2005. (D.E. 13-1 at 31—32.) The Tennessee Court of Criminal Appeals affirmed. <u>State v. Jarrett</u>, No. W2005-02157-CCA-R3-CD, 2007 WL 1215047 (Tenn. Crim. App. Apr. 24, 2007), <u>appeal denied</u> (Tenn. Aug. 13, 2007).

On December 11, 2007, Jarrett filed a *pro se* petition pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -122, in the Madison County Circuit Court. (D.E. 13-9 at 4—14.) Counsel was appointed for Petitioner and following an evidentiary hearing held on July 14, 2008 (D.E. 13-9 at 40—41; D.E. 13-10) the post-conviction court denied the petition (D.E. 13-9 at 54—55). The Tennessee Court of Criminal Appeals affirmed. <u>Jarrett v. State</u>, No. W2008-01644-CCA-R3-PC, 2010 WL 58925 (Tenn. Crim. App. Jan. 8, 2010), <u>appeal denied</u> (Tenn. May 12, 2010).

The factual basis for these charges was as follows:

> Trooper Claude Cain with the Tennessee Highway Patrol testified that he received a "tip" about Defendant from an unidentified individual on October 30, 2003. A few minutes later, Trooper Cain spotted Defendant's vehicle and pulled him over. Trooper Cain stated that he ran a computer check of Defendant's driver's license and confirmed that Defendant had previously been declared a habitual motor vehicle offender. Trooper Cain stated that a habitual motor vehicle offender status entailed the loss of driving privileges in Tennessee. Trooper Cain identified a certified copy of an order from Hardeman County signed by Judge Blackwood declaring Defendant to be a habitual motor vehicle offender. At the State's request, the order was entered into evidence as Exhibit One without objection by defense counsel. Although a copy of the order is not included in the record on appeal, Trooper Cain's testimony and the trial

3

court's findings are sufficiently clear to determine the
content of Exhibit One.

Trooper Cain testified that an open can of beer
which was two-thirds full was between the front bucket
seats of Defendant's vehicle.  On cross-examination,
Trooper Cain stated that Defendant was the only
individual in the vehicle when he was pulled over and
acknowledged that he did not observe Defendant commit any
moving violations prior to the stop.

State v. Jarrett, 2007 WL 1215047, at *1.

**B.  Procedural History of Jarrett's § 2254 Petition**

On July 28, 2010, Jarrett filed his *pro se* Petition,
accompanied by a legal memorandum. (D.E. 1.) Petitioner paid the
habeas filing fee on August 4, 2010. (D.E. 3.) The Court issued
an order on October 4, 2010, directing Respondent to file the
state-court record and a response to the petition. (D.E. 4.) On
November 21, 2010, Respondent filed his Answer to the Petition for
Writ of Habeas Corpus ("Answer") (D.E. 12), and filed the state
court record on November 29, 2010 (D.E. 13).[2] Petitioner did not
file a reply.

On April 30, 2012, Jarrett filed a Motion for Ruling on the
Pleadings or in the Alternative, Permission to File Reply to the
Answer. (D.E. 15.) In an order issued on May 22, 2012, the Court
denied the motion for a ruling on the pleadings, granted leave to
file a reply to the Answer, directed Respondent to file a

---

[2]    The state-court record was due on November 26, 2010. (see D.E. 11.)
Respondent failed to seek an extension of time to file the record and did not
provide any explanation for his late filing.  The Court will, *in this instance
only*, excuse Respondent's late filing.

4

supplemental memorandum addressing various issues, and directed Petitioner to file a reply, if he chose to do so, within twenty-eight days after the date on which Respondent's supplemental brief was filed. (D.E. 16.) On June 21, 2012, Respondent filed his supplemental response (D.E. 17) but Petitioner did not submit a reply.

## II.    PETITIONER'S FEDERAL HABEAS CLAIM

In his Petition, Jarrett contends that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment, by improperly failing to challenge the traffic stop under the Fourth Amendment. (D.E. 1 at 5; D.E. 1-1.)

## III.    THE LEGAL STANDARD

The statutory authority for federal courts to grant habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### A.    Waiver and Procedural Default

28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by first presenting the same claim sought

5

to be redressed in a federal habeas court to the state courts. Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011), reh'g denied, ___ U.S. ___, 131 S. Ct. 2951, 180 L. Ed. 2d 239 (May 31, 2011). A petitioner must "fairly present"[3] each claim to all levels of state court review, up to and including the state's highest court on discretionary review, Baldwin v. Reese, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158 L. Ed. 2d 64 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, O'Sullivan v. Boerckel, 526 U.S. 838, 847—48, 119 S. Ct. 1728, 1733—34, 144 L. Ed. 2d 1 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court in order to "be deemed to have exhausted all available state remedies." Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003), reh'g and suggestion for reh'g en banc denied (Aug. 27, 2003), cert. denied, 541 U.S. 956, 124 S. Ct. 1654, 158 L. Ed. 2d 392 (2004); see also Smith v. Morgan, 371 F. App'x 575, 579 (6th Cir. 2010) (the Adams holding promotes comity by requiring that state courts have the first opportunity to review and evaluate claims and by mandating that federal courts respect the duly promulgated rule of the Tennessee

---

[3]     For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277, 74 L. Ed. 2d 3 (1982) (per curiam)(internal citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. Gray v. Netherland, 518 U.S. 152, 163, 116 S. Ct. 2074, 2081, 135 L. Ed. 2d 457 (1996), reh'g denied, 519 U.S. 1157, 117 S. Ct. 22, 135 L. Ed. 2d 1116 (Aug. 27, 1996).

Supreme Court that recognizes that court's law and policy-making function and its desire not to be entangled in the business of simple error correction).

The procedural default doctrine is ancillary to the exhaustion requirement.  See Edwards v. Carpenter, 529 U.S. 446, 452—53, 120 S. Ct. 1587, 1592, 146 L. Ed. 2d 518 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. Wainwright v. Sykes, 433 U.S. 72, 87—88, 97 S. Ct. 2497, 2506—07, 53 L. Ed. 2d 594 (1977), reh'g denied, 434 U.S. 880, 98 S. Ct. 241, 54 L. Ed. 2d 163 (Oct. 3, 1977); see also Coleman v. Thompson, 501 U.S. 722, 729—30, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991) (a federal habeas court will not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment"), reh'g denied, 501 U.S. 1277, 112 S. Ct. 27, 115 L. Ed. 2d 1109 (Sept. 13, 1991).  If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), the claim is technically exhausted, but procedurally barred.  Coleman, 501 U.S. at 732, 111 S. Ct. at 2555; see also

<u>Hicks v. Straub</u>, 377 F.3d 538, 551 (6th Cir. 2004) (the procedural default doctrine prevents circumvention of the exhaustion doctrine), <u>cert. denied</u>, 544 U.S. 928, 125 S. Ct. 1653, 161 L. Ed. 2d 490 (2005).

Under either scenario, a petitioner must show "cause" to excuse his failure to present the claim fairly and "actual prejudice" stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. <u>Schlup v. Delo</u>, 513 U.S. 298, 322, 115 S. Ct. 851, 864, 130 L. Ed. 2d 808 (1995); <u>Coleman</u>, 501 U.S. at 750, 111 S. Ct. at 2565. The latter showing requires a petitioner to establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. <u>Schlup</u>, 513 U.S. at 321, 115 S. Ct. at 864; <u>see</u> <u>House v. Bell</u>, 547 U.S. 518, 536—39, 126 S. Ct. 2064, 2076—78, 165 L. Ed. 2d 1 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

**B.   Merits Review**

Section 2254(d) establishes the standard for addressing claims that have been adjudicated in state courts on the merits:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the
Supreme Court of the United States; or

(2)   resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d)(1)—(2).  The petitioner carries the burden of
proof for this "difficult to meet" and "highly deferential [AEDPA]
standard," which "demands that state-court decisions be given the
benefit of the doubt."  Cullen, ___ U.S. at ___, 131 S. Ct. at 1398
(internal quotation marks and citations omitted).[4]

Review under § 2254(d)(1) is limited to the record that was
before the state court that adjudicated the claim on the merits.
Cullen, ___ U.S. at ___, 131 S. Ct. at 1399.  A state court's
decision is "contrary to" federal law when it "arrives at a
conclusion opposite to that reached" by the United States Supreme
Court on a question of law or "decides a case differently than" the
Supreme Court has "on a set of materially indistinguishable facts."
Williams v. Taylor, 529 U.S. 362, 412—13, 120 S. Ct. 1495, 1523,
146 L. Ed. 2d 389 (2000).[5]  An "unreasonable application" of

_____

[4]   The AEDPA standard creates "a substantially higher threshold" for
obtaining relief than a *de novo* review of whether the state court's determination
was incorrect.  Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939,
167 L. Ed. 2d 836 (2007), reh'g denied, 551 U.S. 1177, 128 S. Ct. 7, 168 L. Ed.
2d 784 (July 30, 2007).

[5]   The "contrary to" standard does not require citation of Supreme Court
cases "so long as neither the reasoning nor the result of the state-court
decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365,
154 L. Ed. 2d 263 (2002) (per curiam), reh'g denied, 537 U.S. 1148, 123 S. Ct.
955, 154 L. Ed. 2d 854 (Jan. 13, 2003); see Mitchell v. Esparza, 540 U.S. 12, 16,
124 S. Ct. 7, 10, 157 L. Ed. 2d 263 (2003) (same); Treesh v. Bagley, 612 F.3d
424, 429 (6th Cir. 2010) (same), cert. denied, ___ U.S. ___, 131 S. Ct. 1678, 179
(continued...)

federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412–13, 120 S. Ct. at 1523.  The state court's application of clearly established federal law must be "objectively unreasonable." Id. at 409, 120 S. Ct. at 1521.  The writ may not issue merely because the habeas court, in its independent judgment, determines that the state court decision applied clearly established federal law erroneously or incorrectly.  Renico v. Lett, ___ U.S. ___, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010); Williams, 529 U.S. at 411, 129 S. Ct. at 1522.

There is little case law addressing the standard in § 2254(d)(2) that a decision was based on "an unreasonable determination of facts."  However, in Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010), reh'g denied, 559 U.S. 1032, 130 S. Ct. 1942, 176 L. Ed. 2d 405 (Mar. 22, 2010), the Supreme Court stated that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion."  In Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 976, 163 L. Ed. 2d 824 (2006), the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question,

---

[5]      (...continued)
L. Ed. 2d 622 (2011).

"but on habeas review that does not suffice to supersede the trial court's . . . determination."[6]

"Notwithstanding the presumption of correctness, the Supreme Court has explained that the standard of § 2254(d)(2) is 'demanding but not insatiable.'" Harris v. Haeberlin, 526 F.3d 903, 910 (6th Cir. 2008), reh'g and reh'g en banc denied (Aug. 14, 2008) (quoting Miller-El v. Dretke, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005)). "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003). A state court adjudication will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. Ayers v. Hudson, 623 F.3d 301, 308 (6th Cir. 2010), reh'g and reh'g en banc denied (Dec. 28, 2010); see Hudson v. Lafler, 421 F. App'x 619, 624 (6th Cir. 2011) (same), cert. denied, ___ U.S. ___, 132 S. Ct. 1085, 181 L. Ed. 2d 803 (2012).

## IV.        ANALYSIS OF PETITIONER'S CLAIM

Jarrett contends that his attorney rendered ineffective assistance, in violation of the Sixth Amendment, by failing to file

---

[6]      In Wood, 558 U.S. at 293, 299, 120 S. Ct. at 845, 848, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was "unreasonable," or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence. The Court ultimately found it unnecessary to reach that issue. Id. at 300. In Rice, 546 U.S. at 339, 126 S. Ct. at 974, the Court recognized that it is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable.

a motion to suppress the fruits of the traffic stop.  He raised
this issue in his post-conviction petition (D.E. 13-9 at 66—70) and
in his brief to the Tennessee Court of Criminal Appeals on the
post-conviction appeal (D.E. 13-12 at 14, 28—36).  In affirming the
post-conviction court's denial of relief, the Tennessee Court of
Criminal Appeals stated as follows:

> On appeal, the petitioner raises the single issue of
> ineffective assistance of counsel.  He challenges trial
> counsel's performance in both of his cases.  To succeed
> on a challenge of ineffective assistance of counsel, the
> petitioner bears the burden of establishing the
> allegations set forth in his petition by clear and
> convincing evidence.  T.C.A. § 40-30-110(f) (2006).  The
> petitioner must demonstrate that counsel's representation
> fell below the range of competence demanded of attorneys
> in criminal cases.  Baxter v. Rose, 523 S.W.2d 930, 936
> (Tenn. 1975).  Under Strickland v. Washington, 466 U.S.
> 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> petitioner must establish (1) deficient performance and
> (2) prejudice resulting from the deficiency.  The
> petitioner is not entitled to the benefit of hindsight,
> may not second-guess a reasonably-based trial strategy,
> and cannot criticize a sound, but unsuccessful, tactical
> decision made during the course of the proceedings.
> Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App.
> 1994).  This deference to the tactical decisions of trial
> counsel is dependent upon a showing that the decisions
> were made after adequate preparation.  Cooper v. State,
> 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).
>
> It is unnecessary for a court to address deficiency
> and prejudice in any particular order or even to address
> both if the petitioner makes an insufficient showing on
> either.  Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.
> In order to establish prejudice, the petitioner must
> establish a "reasonable probability that, but for
> counsel's unprofessional errors, the result of the
> proceeding would have been different.  A reasonable
> probability is a probability sufficient to undermine
> confidence in the outcome." State v. Burns, 6 S.W.3d
> 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at
> 694).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. Id. at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. Id.

. . . .

In regard to this case, the petitioner asserts that trial counsel was ineffective in that he "failed to properly challenge the trooper's inability to show that the traffic stop was based upon reasonable suspicion." According to the petitioner, trial counsel never attempted to move for dismissal of the charges based upon the illegal investigative stop of his vehicle. He asserts that no reasonable suspicion supported the stop as the identity of the "tipster" who reported that the petitioner was a habitual motor vehicle driving on the public roadways of the state was not known to the trooper. He further asserts that no independent specific and articulable facts which would have justified the stop were established as the trooper did not witness the petitioner committing any illegal acts.

In denying relief on this issue, the post-conviction court found as follows:

In [this] case the petitioner complains that counsel should have filed a motion to suppress or dismiss the indictment because the State Trooper who stopped him did so after receiving a tip from the petitioner's bondsman who related to the Trooper that the petitioner was driving on a revoked license. The petitioner contends that the trooper did not have reasonable suspicion to make this stop and therefore the stop was unlawful. The petitioner admits that he was driving and [that] he has been declared a habitual motor vehicle offender. The Court did deny a motion to dismiss that was filed just before the trial. The Court

finds that as to this issue that the information
received by the Trooper was probably from a very
reliable source that being the petitioner's
bondsman who would have knowledge and had knowledge
of his license status so even if the issue were
raised it would in all likelihood not be
successful. Further the fact that the Trooper
witnessed the [petitioner] driving prior to the
stop would not be suppressed and the petitioner
admits the fact that he was a habitual motor
vehicle offender so the evidence would still be the
same even if the motion were raised. The
[petitioner] admits to being the driver and that he
is a habitual motor vehicle offender there really
[is not] much of defense and nothing counsel could
do except go to trial or work out a guilty plea but
there really is no defense.

Review of the record reveals nothing to preponderate
against the post-conviction court's findings. The
petitioner complains that trial counsel was deficient for
failing to file a motion to dismiss, but trial counsel
stated that a motion was filed in the case. Moreover,
the post-conviction court specifically stated that a
motion to dismiss was filed and denied prior to trial.
Thus, the record does not support the petitioner's
contention that trial counsel was deficient in this
regard. In his argument, the petitioner contends that
the record does not support that a motion was timely
filed in the case. However, because he has failed to
include the trial record for our review, he has failed to
establish that counsel failed to challenge the stop. It
is the petitioner who bears the burden of preparing an
adequate record on appeal, State v. Ballard, 855 S.W.2d
557, 560 (Tenn. 1993), which includes the duty to "have
prepared a transcript of such part of the evidence or
proceedings as is necessary to convey a fair, accurate
and complete account of what transpired with respect to
those issues that are the bases of appeal." Tenn. R.
App. P. 24(b). Moreover, the petitioner has failed to
establish the prejudice prong as well, as the post-
conviction court stated that such a motion was not
meritorious. If the petitioner fails to file an adequate
record, this court must presume that the post-conviction
court's ruling was correct. See State v. Richardson, 875
S.W.2d 671, 674 (Tenn. Crim. App. 1993). Thus, the
petitioner is not entitled to relief on this issue.

14

Jarrett v. State, 2010 WL 58925, at *5.

In its order issued on May 22, 2012, the Court directed Respondent to address whether Petitioner properly exhausted this issue in state court in light of the Tennessee Court of Criminal Appeals' discussion of his failure to comply with Tennessee Rule of Appellate Procedure 24(b). (D.E. 16 at 2—3.)  In his Supplemental Answer, Respondent states that

> the Court of Criminal Appeals did not refuse to address petitioner's ineffective assistance of counsel claim by relying on a state procedural bar.  Rather, in its opinion, the state court addressed both the deficient performance prong and the prejudice prong of the Strickland analysis.  The court found that Jarrett had failed to meet his evidentiary burden——that being establishing trial counsel had failed to file a motion regarding the traffic stop.

(D.E. 17 at 7—8.)

If a state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by procedural default from seeking federal habeas review.   See supra pp. 7—8.  The Sixth Circuit Court of Appeals applies a four-part test to determine whether a habeas claim has been procedurally defaulted due to a petitioner's failure to comply with a state procedural rule:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .

Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under Sykes that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986) (citations & footnote omitted); see also Stone v. Moore, 644 F.3d 342, 346 (6th Cir. 2011); Clinkscale v. Carter, 375 F.3d 430, 440—41 (6th Cir. 2004), cert. denied, 543 U.S. 1177, 125 S. Ct. 1316, 161 L. Ed. 2d 162 (2005).

In this case, it appears that Jarrett violated Tennessee Rule of Appellate Procedure 24(b), which requires the appellant to designate the relevant portions of the record on appeal.[7] However,

---

[7]   Rule 24(b) provides as follows:

If a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. Unless the entire transcript is to be included, the appellant shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve on the appellee a description of the parts of the transcript the appellant intends to include in the record, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. If the appellee deems a transcript of other parts of the proceedings to be necessary, the appellee shall, within 15 days after service of the description and
(continued...)

the Tennessee Court of Criminal Appeals did not enforce that procedural rule by denying relief on that basis. Therefore, Jarrett's claim is not barred by procedural default.

Even if that were not the case, procedural default is an affirmative defense. Trest v. Cain, 522 U.S. 87, 89, 118 S. Ct. 478, 480, 139 L. Ed. 2d 444 (1997) ("[P]rocedural default is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter.") (internal quotation marks, alteration & citations omitted); Gray v. Netherland, 518 U.S. 152, 116 S. Ct. 2074, 2082, 135 L. Ed. 2d 457 (1996)("procedural default is an affirmative defense" for the State); Whiting v. Burt, 395 F.3d 602, 610 (6th Cir. 2005) (declining to enforce a procedural default that was not

_____

7      (...continued)
declaration, file with the clerk of the trial court and serve on the appellant a designation of additional parts to be included. The appellant shall either have the additional parts prepared at the appellant's own expense or apply to the trial court for an order requiring the appellee to do so. The transcript, certified by the appellant, the appellant's counsel, or the reporter as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the transcript, the appellant shall simultaneously serve notice of the filing on the appellee. Proof of service shall be filed with the clerk of the trial court with the filing of the transcript. If the appellee has objections to the transcript as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of notice of the filing of the transcript. Any differences regarding the transcript shall be settled as set forth in subdivision (e) of this rule.

Within 15 days after filing the notice of appeal the appellant in a criminal action shall order from the reporter a transcript of such parts of the evidence or proceedings not already on file as the appellant deems necessary. The order shall be in writing and within the same period a copy shall be filed with the clerk of the trial court. If funding is to come from the state of Tennessee, the order shall so state.

raised by the State), reh'g en banc denied (Mar. 15, 2005); Benoit v. Bock, 237 F. Supp. 2d 804, 807 (E.D. Mich. 2003) (describing both exhaustion and procedural default as affirmative defenses). The Supplemental Answer makes clear that Respondent is not relying on the affirmative defense of procedural default and, therefore, the Court will address the merits of the Petition.

A claim that ineffective assistance of counsel has deprived a habeas petitioner of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), reh'g denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (June 25, 1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064; Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.[8] "A reasonable
probability is a probability sufficient to undermine confidence in
the outcome." Id. at 694, 104 S. Ct. at 2068.  It is not enough
"to show that the errors had some conceivable effect on the outcome
of the proceeding." Id. at 693, 104 S. Ct. at 2067.  Counsel's
errors must be "so serious as to deprive the defendant of a fair
trial, a trial whose result is reliable." Id. at 687, 104 S. Ct.
at 2064; ; see also Richter, ___ U.S. at ___, 131 S. Ct. at 787—88,
791—92 ("In assessing prejudice under Strickland, the question is
not whether a court can be certain counsel's performance had no
effect on the outcome or whether it is possible a reasonable doubt
might have been established if counsel acted differently. . . .
The likelihood of a different result must be substantial, not just
conceivable.") (citations omitted); Wong v. Belmontes, 558 U.S. 15,
27, 130 S. Ct. 383, 390—91, 175 L. Ed. 2d 328 (2009) (per curiam)
("But Strickland does not require the State to 'rule out' [a more
favorable outcome] to prevail.  Rather, Strickland places the
burden on the defendant, not the State, to show a 'reasonable
probability' that the result would have been different."), reh'g

---

[8]      "[A] court need not determine whether counsel's performance was
deficient before examining the prejudice suffered by the defendant . . . ." Id.
at 697, 104 S. Ct. at 2069.  If a reviewing court finds a lack of prejudice, it
need not determine whether, in fact, counsel's performance was deficient. Id.
at 697, 104 S. Ct. at 2069.

denied, 558 U.S. 1138, 130 S. Ct. 1122, 175 L. Ed. 2d 931 (Jan. 11, 2010).

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689—690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id. at 689, 104 S. Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S. at 690, 104 S. Ct. 2052.

Richter, ___ U.S. at ___, 131 S. Ct. at 788.

When an ineffective assistance claim is reviewed under § 2254(d), the review is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009).

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S. Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7,

20

117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, <u>Knowles</u>, 556 U.S., at ----, 129 S. Ct. at 1420.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  556 U.S., at ----, 129 S. Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Richter</u>, ___ U.S. at ___, 131 S. Ct. at 788.

In evaluating Jarrett's claim that his attorneys rendered ineffective assistance, it is first necessary to address whether grounds for a suppression motion existed.  The legal standard for evaluating a motion to suppress a traffic stop filed in a Tennessee trial court is the following:

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents.  <u>See</u> U.S. Const. amend. IV; Tenn. Const. art. I, § 7.  "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'"  [<u>State v. Keith</u>, 978 S.W.2d 861, 865 (Tenn. 1998)] (quoting <u>Camara v. Mun. Ct.</u>, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)).  The Tennessee Supreme Court has noted previously that "article I, section 7 of the Tennessee Constitution is identical in intent and purpose with the Fourth Amendment of the United States Constitution," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive."  <u>Sneed v. State</u>, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined

exceptions to the warrant requirement." [State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)] (citing Coolidge v. New Hampshire, 403 U.S. 443, 454—55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)); see also State v. Garcia, 123 S.W.3d 335, 343 (Tenn. 2003).

One of these narrow exceptions occurs when a law enforcement officer stops an automobile based on probable cause or reasonable suspicion that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002); [State v. Vineyard, 958 S.W.2d 739, 734 (Tenn. 1997)]. If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. See Whren, 517 U.S. at 813—15, 116 S. Ct. 1769; State v. Vineyard, 958 S.W.2d 730, 734—35 (Tenn. 1997). Another such exception occurs when a law enforcement officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense. Terry v. Ohio, 392 U.S. 1, 20—21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). This narrow exception has been extended to the investigatory stop of vehicles. See United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether the law enforcement officer had reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. See Terry, 392 U.S. at 21, 88 S. Ct. 1868; Binette, 33 S.W.3d at 218; Watkins, 827 S.W.2d at 294. Objective standards apply, rather than the subjective beliefs of the officer making the stop. State v. Day, 263 S.W.3d 891, 903 (Tenn. 2008); State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). "An officer making an investigatory stop must be able to articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" Day, 263 S.W.3d at 902 (quoting Terry, 392 U.S. at 27, 88 S. Ct. 1868). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain

offenders.  Id.; Watkins, 827 S.W.2d at 294 (citing
United States v. Cortez, 449 U.S. 411, 418, 101 S. Ct.
690, 66 L. Ed. 2d 621 (1981)).   A court must also
consider the rational inferences and deductions that a
trained police officer may draw from the facts and
circumstances known to him.   Terry, 392 U.S. at 21, 88 S.
Ct. 1868.

State v. Watson, 354 S.W.3d 324, 329-30 (Tenn. Crim. App. 2011).

One of the factors a police officer may consider is a tip
received from an informant.   In Alabama v. White, 496 U.S. 325,
326—27, 110 S. Ct. 2412, 2414, 110 L. Ed. 2d 301 (1990), the
Supreme Court held that an anonymous informant's tip, which was
corroborated by independent police work, exhibited sufficient
indicia of reliability to provide reasonable suspicion to make an
investigatory stop.   In so holding, the Supreme Court observed that
an anonymous tip, standing alone, was unlikely to justify an
investigatory stop.   Id. at 329, 110 S. Ct. at 2415—16.   The
Supreme Court found that, "[a]lthough it is a close case, we
conclude that under the totality of the circumstances the anonymous
tip, as corroborated, exhibited sufficient indicia of reliability
to justify the investigatory stop of respondent's car."   Id. at
332, 110 S. Ct. at 2417.   The White opinion relied most heavily on
the fact that the tip conveyed not just existing information, but
a prediction of future behavior.   Id., 110 S. Ct. at 2416.

Subsequently, in Florida v. J.L., 529 U.S. 266, 268, 120 S.
Ct. 1375, 1377, 146 L. Ed. 2d 254 (2000), the Supreme Court held
that an anonymous informant's tip that a certain person was

23

carrying a gun was not sufficient to justify a <u>Terry</u> stop.  The
decision noted that "the officers' suspicion that J.L. was carrying
a weapon arose not from any observations of their own but solely
from a call made from an unknown location by an unknown caller."
<u>Id.</u> at 270, 120 S. Ct. at 1378.  For that reason,

> [t]he tip in the instant case lacked the moderate indicia
> of reliability present in <u>White</u> and essential to the
> Court's decision in that case.  The anonymous call
> concerning J.L. provided no predictive information and
> therefore left the police without means to test the
> informant's knowledge or credibility.  That the
> allegation about the gun turned out to be correct does
> not suggest that the officers, prior to the frisks, had
> a reasonable basis for suspecting J.L. of engaging in
> unlawful conduct:  The reasonableness of official
> suspicion must be measured by what the officers knew
> before they conducted their search. All the police had to
> go on in this case was the bare report of an unknown,
> unaccountable informant who neither explained how he knew
> about the gun nor supplied any basis for believing he had
> inside information about J.L.  If <u>White</u> was a close case
> on the reliability of anonymous tips, this one surely
> falls on the other side of the line.

<u>Id.</u> at 271, 120 S. Ct. at 1379.  The Supreme Court rejected the
argument that "the tip was reliable because its description of the
suspect's visible attributes proved accurate:  There really was a
young black male wearing a plaid shirt at the bus stop." <u>Id.</u>, 120
S. Ct. at 1379.  The Court explained that information of that
nature is reliable in the sense that "[i]t will help the police
correctly identify the person whom the tipster means to accuse,"
but it "does not show that the tipster has knowledge of concealed
criminal activity." <u>Id.</u> at 272, 120 S. Ct. at 1379.  The Supreme
Court also rejected the argument that a "firearm exception" to

Terry should be recognized because of the serious threat that armed criminals present to the public safety. Id. at 272—73, 120 S. Ct. at 1379—80.[9]

At the time of Jarrett's trial, there was no controlling Tennessee decision about whether an anonymous tip is sufficient to provide reasonable suspicion for a traffic stop. In State v. McQueen, No. 03-C-019107CR202, 1992 WL 8789 (Tenn. Crim. App. Jan. 23, 1992), the Tennessee Court of Criminal Appeals held that the trial court did not err in denying a suppression motion for a motorist who later pled guilty to operating a motor vehicle while a HMVO. In that case, the officers received a specific tip of a vehicle driven by a person who was under the influence. They followed the vehicle and, when it stopped at a service station, asked the driver for identification. The officers also noticed the odor of intoxicants on the suspect's breath, although he passed a field sobriety test. Id. at *1. The Court of Criminal Appeals concluded that

> Officer Verran had a legitimate right to approach the appellant and request to see his license to determine the appellant's identity. Moreover, Verran was justified in temporarily detaining the appellant, giving the field sobriety tests, and checking the status of his license given the information he had been furnished by the complainant, seeing the appellant operate a motor vehicle

---

[9]     See also Virginia v. Harris, 558 U.S. 978, 130 S. Ct. 10, 11—12, 175 L. Ed. 2d 322 (2009) (Roberts, C.J., joined by Scalia, J., dissenting from denial of certiorari) (noting that "a sharp disagreement has emerged among federal and state courts over how to apply the Fourth Amendment" when police receive anonymous tips about a drunk driver but do not observe a traffic violation).

on a public street, and discovering that the appellant had an odor of an intoxicant on his breath.

Id. (citations omitted). McQueen was not a Terry stop because the suspect had stopped his vehicle. The Tennessee Court of Criminal Appeals relied on State v. Butler, 795 S.W.2d 680, 685 (Tenn. Crim. App. 1990), which stated that "[a]n officer may legitimately approach a vehicle parked in a public place and make a request for identification of the driver" even in the absence of "reasonable suspicion of illegal activity."[10]

Subsequently, in State v. Luke, 995 S.W.2d 630, 633 (Tenn. Crim. App. 1998), appeal denied (Tenn. May 10, 1999), the Tennessee Court of Criminal Appeals held that a telephone call from a hotel desk clerk who described a vehicle and stated that her security guard said the suspect "had no business driving" was sufficiently reliable to justify a Terry stop. The state appellate court concluded that the caller was a "known citizen informant" because she gave her name, location, and occupation, which was sufficient to establish the basis for her information. Id. at 637.[11]

---

[10]     The Court of Criminal Appeals apparently assumed that McQueen was not "seized" even though the police officer turned on his blue lights when he parked beside McQueen's vehicle. McQueen, 1992 WL 8789, at *1. In subsequent decisions, the Tennessee appellate courts have stated that, "[w]hen an officer turns on his blue lights, he or she has clearly initiated a stop." State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993) (officer approached parked car, which "might have started rolling a little bit"); see also State v. Moats, 403 S.W.3d 170, 188, 2013 WL 1181967, at *13 (Tenn. 2013) (activation of blue lights when approaching a car parked with its lights on in shopping center parking lot late at night constituted a seizure not justified by community caretaking function of police).

[11]     The Court of Criminal Appeals also addressed, in dicta, why the information was reliable even if the tipster were an anonymous citizen informant.
                                                        (continued...)

26

In <u>State v. Day</u>, 263 S.W.3d 891, 895 (Tenn. 2008), which was decided after Jarrett's trial but while the post-conviction appeal was pending, the Tennessee Supreme Court held that an anonymous driver's actions in flashing her vehicle lights, waving at a police officer, and pointing to the vehicle in front of her did not provide reasonable suspicion to make an investigatory stop.  The court noted that, "[u]nder circumstances where the information forming the basis for a motor vehicle stop is derived from an anonymous informant, Tennessee law requires some showing of both the informant's veracity and his or her basis of knowledge."  <u>Id.</u> at 903.  The <u>Day</u> opinion stated that the informant was not known to the officer, who "had no basis upon which to evaluate [the informant's] status or her relationship to the defendant.  The only information he had was the single fact that she was driving behind the defendant's SUV."  <u>Id.</u> at 905.  Although it was reasonable for the officer to infer that the informant saw Day do something that aroused her concern, the Tennessee Supreme Court concluded that it was not reasonable for the officer to infer that Day had engaged in criminal behavior.  <u>Id.</u>  <u>Day</u> differs from the majority of anonymous tips in that no one from the police department spoke to the informant about the nature of her information before making the stop.

---

[11]    (...continued)
<u>Id.</u> at 637—38.  Specifically, the Court concluded that "the potential for serious harm justified the stop."  <u>Id.</u> at 638.  That discussion may not be good law in light of the Supreme Court's subsequent decision in <u>J.L.</u>.

In <u>State v. Davidson</u>, No. E2007-02841-CCA-R3CD, 2008 WL 8429683 (Tenn. Crim. App. Sept. 10, 2008), another decision issued during the pendency of the post-conviction appeal, the police received a tip that a male subject had fallen in the parking lot of a bar and then entered a specific vehicle. An officer followed the automobile and watched its left tires briefly go across the center line four times. The Court of Criminal Appeals upheld the traffic stop, stating:

> In our view, it appears from the DVD that Appellee's left tires crossed completely over the yellow line into the turn lane at least one time. After the turn lane became a double yellow line, it appears on the DVD that Appellee crossed the double yellow lines at least one time immediately before a semi-truck passed him in the opposite direction. Even if Appellee only crossed the double yellow lines one time, that evidence in and of itself would equate to probable cause to initiate a traffic stop under Tennessee Code Annotated sections 55-8-121 or 55-8-123. Taking the actual observations of Lieutenant Davis in conjunction with the information that Lieutenant Davis received from dispatch about a male falling in a bar parking lot before getting behind the wheel of a maroon or red vehicle that was then seen at the tobacco store, leads us to the conclusion that Lieutenant Davis had at least reasonable suspicion to affect a traffic stop herein. We acknowledge, as did the trial judge, that this case presents a close call on the issue of the legality of the stop.

<u>Id.</u> at *5.

Jarrett's Petition does not state whether he contends that the decision of the Tennessee Court of Criminal Appeals on his ineffective assistance claim was contrary to, or an unreasonable application of, <u>Strickland v. Washington</u>, or whether it was based on an unreasonable factual determination. The decision was a run-

of-the-mill case applying the correct legal standard from Strickland to the facts of Jarrett's case and, therefore, the "contrary to" clause is inapplicable.[12]

Petitioner also has not satisfied his burden of demonstrating that the state-court decision was an unreasonable application of Strickland or was based on an objectively unreasonable factual determination.  Had Jarrett provided the relevant portions of the trial record to the Tennessee Court of Criminal Appeals, as he was required to do, he might have succeeded in this showing.  The foregoing legal discussion establishes that the inmate had a potentially meritorious motion to suppress based on the absence of reasonable suspicion to make a Terry stop.  At trial, Trooper Cain testified that he stopped Jarrett because "I received a tip about Mr. Jarrett" and that, after he stopped the vehicle, he ran Jarrett's driver's license and discovered him to be a HMVO. (D.E. 13-3 at 78-79.)  On cross-examination, Cain was asked for the source of the tip, and he responded, "An individual." (Id. at 83.) Cain was unable to provide any further information about the source of the tip. (Id.)  He could not see the open container of beer from his patrol car. (Id. at 83—84.)  The officer did not observe

---

[12]    The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. 362, 406—407, 120 S. Ct. 1495, 1520, 146 L. Ed. 2d 389 (2000)("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

Jarrett commit a traffic violation, and he did not personally know Jarrett. (Id. at 84.) This testimony was not available to the Tennessee Court of Criminal Appeals on the post-conviction appeal because Petitioner did not make it a part of the record on appeal.

The opinion of the Tennessee Court of Criminal Appeals on direct appeal stated that the tipster was "an unidentified individual" and that Cain "did not observe [Jarrett] commit any moving violations prior to the stop." State v. Jarrett, 2007 WL 1215047, at *1. At the post-conviction hearing, Gregory Gookin, one of the two attorneys who represented him at trial, testified that "I believe Mr. Howell had talked to the trooper either the day of the trial or the day before. The trooper had said that I believe it was Mr. Jarrett's former bondsman or something to that effect had told the trooper that Mr. Jarrett was driving on a suspended license or was not driving legally and the trooper pulled him over at that point." (D.E. 13-10 at 8—9.) Post-conviction counsel did not question Gookin about the basis for this knowledge and did not introduce any other evidence tending to impeach Gookin's statement.[13] Therefore, the Court finds that, on the

---

[13] There appears to have been ample material to impeach that statement, had post-conviction counsel chosen to do so. Gookin could have been asked about the basis for his belief about the purported conversation between his co-counsel and Cain. As previously noted, Cain did not testify to the source of his tip during cross-examination at trial. Had Gookin known about the conversation at trial, it seems unlikely that he would have pursued that line of questioning. Gookin's testimony at the post-conviction hearing also is not supported by Cain's affidavit of complaint, which stated that "I was told by a citizen that the green car ahead of me on I-40 was wanted by Jackson Police Dept and the driver's name was Dennis Jarrett[.]" (D.E. 13-1 at 20.) Cain's affidavit of complaint was not part of the record on the post-conviction appeal.

record before the Tennessee Court of Criminal Appeals, the conclusion that "the information received by the Trooper was probably from a very reliable source that being the petitioner's bondsman who would have knowledge and had knowledge of his license status," Jarrett v. State, 2010 WL 58925, at *5, was not objectively unreasonable.  Given that factual finding of the post-conviction court, which was adopted by the Tennessee Court of Criminal Appeals, this case is similar to State v. Luke, 995 S.W.2d at 637, where a tip from a hotel desk clerk provided reasonable suspicion.  Therefore, the finding of the Tennessee Court of Criminal Appeals that Jarrett "has failed to establish the prejudice prong . . ., as the post-conviction court stated that [a motion to suppress] was not meritorious," Jarrett v. State, 2010 WL 58925, at *5, is not an objectively unreasonable application of Strickland and is not based on an objectively unreasonable factual determination.[14]

---

[14]     In light of the conclusion in the text, the additional reasoning of the state courts does not require further discussion.  The conclusion that counsel's performance was not deficient because he filed a suppression motion, see id., overlooks the statement of the post-conviction court that the motion was denied as untimely. (See D.E. 13-10 at 31.) ("I can't recall the specifics about the motion to dismiss.  It may have been that it was filed too late, maybe the day before the trial and it was brought to the Court's attention on the morning of the trial.  I think that's probably what happened.")  It is unclear whether the Tennessee Court of Criminal Appeals found that the motion was untimely.  If it did, the conclusion that counsel's performance was not deficient makes sense only if the motion was substantively meritless.  The technical record for the direct appeal reflects that the traffic stop was challenged in a Motion to Dismiss filed on February 8, 2005.  (D.E. 13-1 at 18—19.)  No written decision on the motion appears in the record.  The trial court denied the motion at a hearing on February 9, 2005, which was not transcribed.  (See D.E. 13-2 at 16.)

     The Tennessee Court of Criminal Appeals also may have adopted the post-conviction court's statement that, even if the suppression motion were
(continued...)

31

Therefore, the Petition is without merit and is DISMISSED WITH PREJUDICE.  Judgment shall be entered for Respondent.

## IV.        APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 335, 123 S. Ct. at 1039; <u>Bradley v. Birkett</u>, 156 F. App'x 771, 772 (6th Cir. 2005), *reh'g en banc denied* (Jan. 10, 2006).  The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.  Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.  A petitioner may not take an appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

---

[14]        (...continued)
granted, Cain could still testify that he saw Jarrett driving.  <u>Jarrett v. State</u>, 2010 WL 58925, at *5.  In its various filings, the State has cited no authority for this proposition.  Although Cain could still have testified that he saw an individual driving, it would appear that he would be unable to testify that the driver was Jarrett, who he did not know prior to the stop.

further." <u>Miller-El</u>, 537 U.S. at 336, 123 S. Ct. at 1039; <u>see also</u> <u>Henley v. Bell</u>, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same), <u>cert. denied</u>, 555 U.S. 1160, 129 S. Ct. 1057, 173 L. Ed. 2d 482 (2009). A COA does not require a showing that the appeal will succeed, <u>Miller-El</u>, 537 U.S. at 337, 123 S. Ct. at 1039; <u>Caldwell</u> <u>v. Lewis</u>, 414 F. App'x 809, 814—15 (6th Cir. 2011), but courts should not issue a COA as a matter of course. <u>Bradley</u>, 156 F. App'x at 773.

In this case, there can be no question that the Petition is meritless for the reasons previously stated. Because any appeal by Petitioner on the issue presented does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. <u>See</u> Fed. R. App. P. 24(a)(4)—(5). In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any

appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is DENIED.[15]

IT IS SO ORDERED this 23rd day of September, 2013.


s/J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[15]     If Petitioner files a notice of appeal, he must pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this order.  See Fed. R. App. P. 24(a)(5).